# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

ISAAIH XAVIZER ASH,

        Plaintiff,

v.                                       Case No. 3:20-cv-229-J-32JRK

SGT. DANIEL et al.,

        Defendant.

_____

## ORDER

Plaintiff, a pretrial detainee at the Columbia County Jail, initiated this action by filing a pro se Civil Rights Complaint. Doc. 1. Plaintiff is currently in pretrial custody for a pending state court criminal case in which the state is prosecuting Plaintiff for attempted armed robbery while masked. See State v. Ash, No. 12-2019-CF-000796 (Fla. 3d Cir. Ct.). He names three Columbia County correctional officers as defendants: Sergeant Daniel, Corporal Guyger, and Officer Dampeire. Doc. 1 at 1-3. He claims that on February 23, 2020, officers ordered "the pod" to get on their assigned bunks. Id. at 5. Plaintiff states that he then put a "sheet around [his] face because [he has] bad asthma and officers threaten[ed] to spray."[1] Id. Because Plaintiff had a sheet around his

_____

[1] Plaintiff does not allege that the officers used chemical agents on him or any other inmate.

face, see id., and "for disobeying a verbal order," see id. at 7, officers took Plaintiff out of his dorm and put him in confinement. Id. He claims that while he was being moved to confinement, Defendant Daniel threatened to gas Plaintiff and made derogatory and offensive remarks.

According to Plaintiff, while housed in confinement, Defendants Daniel and Guyger, along with Officers Brown and Gainey (who are not named as defendants), searched Plaintiff's cell and illegally seized his "legal paperwork and legal . . . documents out of [his] motion of discovery," hindering his ability to represent himself in state court. Id. He also argues that they took his towel, rag, soap, toothbrush, and toothpaste, which subjected him to cruel and unusual punishment. Id. Finally, he avers that they confiscated his Bible and his "Civilizations of Africa" book that he uses for his Islamic study, violating his "freedom of religious belief." Id. He asserts that he has requested that the officers return his belongings, to which they have responded that they are "reviewing cameras"; however, Plaintiff believes the property was thrown away. Id. at 9. As relief, Plaintiff requests that the Court appoint an attorney to represent him in his pending state court criminal case and monetary damages for the constitutional violations he suffered. Id. at 7.

The Prison Litigation Reform Act requires the Court to dismiss a case at any time if the Court determines that the action is frivolous, malicious, fails to

state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B). The Court liberally construes the pro se plaintiff's allegations. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011).

With respect to whether a complaint "fails to state a claim on which relief may be granted," § 1915(e)(2)(B)(ii) mirrors the language of Federal Rule of Civil Procedure 12(b)(6), so courts apply the same standard in both contexts. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); see also Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not do. Id. (quotations, alteration, and citation omitted). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a right secured under the Constitution or laws of the United States. See Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992). Moreover, "conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal." Rehberger v. Henry Cty., Ga., 577 F. App'x 937, 938 (11th Cir. 2014) (per curiam) (quotations and citation omitted). In the absence of a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against a defendant.

### a. Freedom of Religion

Plaintiff argues that the disposal of his religious materials violated his First Amendment right to free exercise of religion. When considering the Free Exercise Clause of the First Amendment, the Supreme Court has stated that "[w]here the claim is invidious discrimination in contravention of the First . . . Amendment[ ], [its] decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose." Iqbal, 556 U.S. at 676, (citing Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 540-541, (1993)). Purposeful discrimination "involves a decisionmaker's undertaking a course of action 'because of, not merely in spite of, [the action's] adverse effects

upon an identifiable group.'" Id. at 676-77 (alteration in original) (quoting Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979)).

As such, to plausibly state a First Amendment violation of freedom of religion, Plaintiff "must plead sufficient factual matter to show that" Defendants took his Bible and religious materials "not for a neutral . . . reason but for the purpose of discriminating on account of . . . religion." Id. at 677; see also Pahls v. Thomas, 718 F.3d 1210, 1230 n.8 (10th Cir. 2013) ("[W]here liability is to be imposed upon an individual defendant for discrimination in violation of the First Amendment, a plaintiff must prove a discriminatory purpose, supported by evidence of the defendant's subjective motivations."). Nothing in the Complaint suggests that Defendants took Plaintiff's religious materials and Bible for the purpose of discriminating on account of his religion. Indeed, his allegations are to the contrary. Plaintiff alleges that his religious items were taken together with other non-religious material when Plaintiff was taken to confinement for disobeying a verbal order. Doc. 1 at 7. Accordingly, Plaintiff has failed to state a First Amendment claim under the Free Exercise Clause, and thus, it is due to be dismissed.

### b.    Conditions of Confinement

Plaintiff argues that Defendants' seizure of his towel, soap, toothbrush, and toothpaste subjected him to cruel and unusual punishment. Id. at 5.

5

Because Plaintiff is a pretrial detainee, his conditions of confinement claims are reviewed under the Fourteenth Amendment rather than the Eighth Amendment. See Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty. Fla., 871 F.3d 1272, 1279 (11th Cir. 2017). Nevertheless, the standard for providing basic human needs and a safe environment to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments. Id.; Goodman v. Kimbrough, 718 F.3d 1325, 1331 n.1 (11th Cir. 2013) ("Regardless of the particular taxonomy under which we analyze the case, however, the result is the same, because 'the standards under the Fourteenth Amendment are identical to those under the Eighth.'") (citation omitted); Hamm v. DeKalb Cty., 774 F.2d 1567, 1574 (11th Cir. 1985) ("This court holds that in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons.").

> "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones . . . ." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotation and citation omitted). Thus, in its prohibition of "cruel and unusual punishments," the Eighth Amendment requires that prison officials provide humane conditions of confinement. Id. However, . . . only those conditions which objectively amount to an "extreme deprivation" violating contemporary standards of decency are subject to

> Eighth Amendment scrutiny. <u>Hudson v. McMillian</u>,
> 503 U.S. 1, 8-9 (1992). Furthermore, it is only a prison
> official's subjective deliberate indifference to the
> substantial risk of serious harm caused by such
> conditions that gives rise to an Eighth Amendment
> violation. <u>Farmer</u>, 511 U.S. at 828 (quotation and
> citation omitted); <u>Wilson v. Seiter</u>, 501 U.S. 294, 303
> (1991).

<u>Thomas v. Bryant</u>, 614 F.3d 1288, 1306 07 (11th Cir. 2010) (internal citations

modified); <u>see</u> <u>Saunders v. Sheriff of Brevard Cty.</u>, 735 F. App'x 559, 564-65

(11th Cir. 2018), <u>petition for cert. filed</u>, No. 18-760 (U.S. Dec. 13, 2018).

Deliberate indifference requires more than mere negligence.

> "To be deliberately indifferent a prison official
> must know of and disregard 'an excessive risk to inmate
> health or safety; the official must both be aware of facts
> from which the inference could be drawn that a
> substantial risk of serious harm exists, and he must
> also draw the inference.'" <u>Purcell</u>, 400 F.3d at 1319-20
> (quoting <u>Farmer</u>, 511 U.S. at 837).

<u>Goodman</u>, 718 F.3d at 1332 (emphasis deleted and internal citations modified).

Unsanitary conditions may rise to the level of a constitutional violation.

> In <u>Chandler</u>, this Court ruled that a convicted inmate
> who alleged he was "confine[d] in a cold cell with no
> clothes except undershorts and with a plastic covered
> mattress without bedding; filth on the cell's floor and
> walls; deprivation of toilet paper for three days;
> deprivation of running water for two days; lack of soap,
> toothbrush, toothpaste, and linen; and the earlier
> occupancy of the cell by an inmate afflicted with an HIV
> virus" established a triable issue of fact. 926 F.2d at
> 1063, 1065. Likewise, in <u>Jordan</u> we held that a pretrial
> detainee's allegations that he was held in

7

> "overcrowded, unsanitary local jails where the food was
> contaminated and fire hazards existed" were sufficient
> for his claims to survive a motion to dismiss (though we
> ultimately held that the government officials in that
> case should have been granted qualified immunity). 38
> F.3d at 1565, 1567. And finally, in <u>Brooks</u> we reversed
> the dismissal of a convicted inmate's claims that he
> "was forced to defecate into his jumpsuit and sit in his
> own feces for two days during his three day hospital
> stay." 800 F.3d at 1303.

<u>Jacoby v. Baldwin Cty.</u>, 835 F.3d 1338, 1345-46 (11th Cir. 2016).

Plaintiff's allegations, however, are distinguishable from those summarized above. Indeed, while Plaintiff argues that he has been deprived of basic hygiene products, he does not allege that he was without a towel, soap, rag, toothpaste, or a toothbrush for an extended period of time. He also does not claim that the conditions of the detention facility itself exacerbated his need for these hygiene products. <u>Cf.</u> <u>Budd v. Motley</u>, 711 F.3d 840, 843 (7th Cir. 2013) (per curiam) ("[A]llegations of unhygienic conditions, when combined with the jail's failure to provide detainees with a way to clean for themselves with running water or other supplies, state a claim for relief."). The circumstances Plaintiff describes fail to state a claim as they do not demonstrate a risk of serious damage to his health or safety, nor do they provide that Defendants knew of an excessive risk to Plaintiff's health and safety. <u>See</u> <u>Hernandez v. Fla. Dep't of Corr.</u>, 281 F. App'x 862, 865 (11th Cir. 2008) ("The challenged condition

8

must be extreme and must pose an unreasonable risk of serious damage to the prisoner's future health or safety."). As such, this claim is due to be dismissed.

### c. Return of Personal Property and Threatening Comments

To the extent Plaintiff requests that the Court order the return of any personal property taken during the cell search, it is well-settled that the Due Process Clause is not offended when a state employee intentionally deprives a prisoner of his property as long as the State provides him with a meaningful post-deprivation remedy. See Hudson v. Palmer, 468 U.S. 517, 533 (1984); Jackson v. Hill, 569 F. App'x 697, 698 (11th Cir. 2014); Taylor v. McSwain, 335 F. App'x 32, 34 (11th Cir. 2009) ("Regarding deprivation of property, a state employee's unauthorized intentional deprivation of an inmate's property does not violate due process under the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."). Plaintiff has an available, adequate post-deprivation remedy under state law. "Under Florida law, [a plaintiff] can sue the officers for the conversion of his personal property." Jackson, 569 F. App'x at 698 (citing Case v. Eslinger, 555 F.3d 1317, 1331 (11th Cir. 2009)).

Moreover, to the extent Plaintiff argues that Defendant Daniels threatened him and made derogatory remarks, threatening comments do not rise to the level of a constitutional violation. See McFadden v. Lucas, 713 F.2d

143, 146 (5th Cir. 1983) (recognizing that "mere threatening language and gestures of a custodial office do not, even if true, amount to constitutional violations"); Barfield v. Hetzel, No. 2:11-cv-1114-WHA, 2015 WL 758490, at *4 (M.D. Ala. Feb. 23, 2015) (unpublished) ("Derogatory, demeaning, profane, threatening or abusive comments made by an officer to an inmate, no matter how repugnant or unprofessional, do not rise to the level of a constitutional violation."); Russell v. Walton Cty. Sheriff's Dep't, No. 3:11-cv-5-CAR, 2011 WL 794146, at *3 (M.D. Ga. Mar. 1, 2011) (unpublished) ("Threats, cursing, name-calling, and verbal abuse, while unprofessional and reprehensible, do not amount to the violation of a federal constitutional right."); Pete's Towing Co. v. City of Tampa, Fla., 648 F. Supp. 2d 1276, 1287 (M.D. Fla. 2009) (citation omitted) ("[V]erbal threats and harassment are generally not actionable under § 1983."). As such, any request for the return of personal property or allegation regarding Defendant Daniel making threatening or derogatory comments are due to be dismissed.

### d. Access to Courts

Finally, liberally read, Plaintiff appears to claim that Defendants violated his First Amendment right to access of courts when they seized his legal material and discovery documents. Plaintiff argues that such conduct has

hindered his ability to properly represent himself in his ongoing state court criminal proceeding. Doc. 1 at 5.

A review of Plaintiff's state court criminal docket shows that soon after Plaintiff's arrest, the state court appointed defense counsel for Plaintiff. See Ash, No. 12-2019-CF-000796. However, it appears that on or about January 28, 2020, Plaintiff requested the state court to conduct a Nelson[2] inquiry and discharge his court-appointed counsel. Id. On February 5, 2020, after conducting the Nelson hearing, the trial court granted Plaintiff's request to discharge his attorney and allowed Plaintiff to proceed pro se. Id.

Prisoners have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817, 828 (1977). That right may be met "by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. at 828. When interpreting the right of access to courts outlined in Bounds, the Eleventh Circuit has held that access to additional legal material is not mandatory where legal counsel is provided as an alternative. Smith v.

_____

[2] See Nelson v. State, 274 So. 2d 256 (Fla. 4th DCA 1973). If a defendant expresses a desire to discharge court appointed counsel because of counsel's ineffectiveness, the trial court will hold a Nelson hearing to determine whether there is reasonable cause to believe that the court appointed counsel is not rendering effective assistance to the defendant. Id. If the trial court finds that counsel is acting ineffectively, the trial judge will appoint substitute counsel. Id. If no such finding is made, the trial judge is to advise defendant that if he discharges his original counsel, the state may not thereafter be required to appoint a substitute. Id.

11

Hutchins, 426 F. App'x 785, 789 (11th Cir. 2011) (citing Hooks v. Wainwright, 775 F.2d 1433, 1435 (11th Cir. 1985) ("concluding state need not provide prisoners assistance of counsel in addition to libraries for purpose of filing collateral suits, stating, 'it is noteworthy that Bounds refers to law libraries or other forms of legal assistance, in the disjunctive, no fewer than five times.'")). Further, "[b]ecause Bounds addressed only the issue of access to courts in the context of inmates filing civil actions or habeas petitions for post-conviction relief, some courts have held that Bounds has no applicability to defendants representing themselves in criminal proceedings."[3] Smith, 426 F. App'x at 789

---

[3] In United States v. Chatman, 584 F.2d 1358 (4th Cir. 1978), the court explained that the right of access to courts for pretrial detainees seeking assistance with a pending criminal action is based on the Sixth Amendment right to counsel. Id. at 1360. The court explained the following:

> [Bounds] held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828. Bounds, of course, has no direct application to defendant. He was accused of crime and had an absolute right to counsel, which he validly waived; he had no present thought of pursuing post-conviction relief. But, even so, we do not read Bounds to give an option to the Prisoner as to the form in which he elects to obtain legal assistance. The option rests with the government which has the obligation to provide assistance as to the form which that assistance will take. Thus, to the extent that it may be said that Bounds has any application to the instant case, the United States satisfied its obligation under the Sixth Amendment when it offered defendant the assistance of counsel which he declined. We so hold. Cf. United States v. West, 557 F.2d 151 (8th Cir. 1977).

n.5. Rather, where a pretrial detainee claims that his lack of access to legal material has hindered his ability to represent himself in a pending criminal proceeding, the constitutional right of access to courts may be satisfied if the plaintiff has been provided the option of legal counsel and his decision to represent himself was voluntarily made. Id. at 789 (citing Edwards v. United States, 795 F.2d 958, 961, n. 1, 3 (11th Cir. 1986) (stating that when counsel is offered, the alternative of other legal assistance is not mandatory, citing Bounds, 430 U.S. at 828); see also Degrate v. Godwin, 84 F.3d 768, 769 (5th Cir. 1996) (agreeing with circuits holding that a defendant who rejects court appointed counsel has no constitutional right to access a law library in preparing a pro se defense at trial); Daker v. Warren, 660 F. App'x 737, 740 (11th Cir. 2016) (reiterating that under Eleventh Circuit precedent access to a law library is not mandatory for a pro se defendant when counsel has been offered); Singleton v. FS No. 7084, No. 3:11-cv-70-J-12TEM, 2011 WL 617942, *3 (M.D. Fla. Feb. 15, 2011) (holding there is no constitutional right to access legal materials in preparing a pro se defense in a criminal case where counsel has been offered and the plaintiff has elected to represent himself).

Here, the Court need not decide whether Bounds applies to pretrial detainees or whether Plaintiff has a right to access additional legal material, because the requirements of Bounds are satisfied if Plaintiff has the option to

receive assistance from court-appointed counsel, but he is voluntarily proceeding pro se. <u>See</u> <u>Smith</u>, 426 F. App'x at 790 n.5 ("[r]egardless of whether <u>Bounds</u> applies to pretrial detainees, we conclude in this case <u>Bounds</u> does not require access to a law library where Smith had the option of assistance of appointed counsel."). While the Court takes judicial notice of Plaintiff's pending state court record, the Court declines to go beyond the four corners of the Complaint when conducting an initial review under § 1915. In the Complaint, Plaintiff alleges that he is representing himself in his pending criminal case and that Defendants have impeded that ability by seizing his legal material and discovery documents. Although Plaintiff may have been offered court appointed counsel and asked to discharge that counsel, he has not alleged those facts in his Complaint, nor has he alleged whether he voluntarily waived his right to counsel in his pending criminal proceeding. Because a more carefully drafted complaint that contains more information may adequately set forth a constitutional claim, Plaintiff may file an amended complaint <u>only</u> as to his access-to-courts claim.

Accordingly, it is

**ORDERED**:

1.     Plaintiff's freedom of religion, conditions of confinement, and return of personal property claims, as well as any claims regarding threating comments are **DISMISSED WITHOUT PREJUDICE**.

2.     To the extent the Complaint sets forth a request that the Court appoint counsel to represent Plaintiff in his state criminal prosecution, that request is **DENIED**. Even if he has previously given up his right to counsel, Plaintiff may request the state court to appoint an attorney to represent him in his criminal case by filing a motion with the state court or voicing his concerns at a scheduled hearing.

3.     By **May 1, 2020,** Plaintiff may submit an amended complaint only as to his access-to-courts claim. In the amended complaint, Plaintiff must allege whether the state court appointed counsel to represent him or whether he voluntarily waived his right to court-appointed counsel. In addition:

   a.    The amended complaint must be on a civil rights complaint form.

   b.    The amended complaint must be marked, "Amended Complaint."

   c.    The amended complaint must name as defendants only those who had been acting under color of state law and are responsible for the alleged constitutional violation.

15

d.   The amended complaint must state the full names of each defendant (to the extent Plaintiff knows them) in the style of the case on the first page and in section I.B.

e.   The list of defendants named on the first page must match the list of named defendants in section I.B.

f.   The amended complaint (or a separate filing) must include current addresses for each defendant so the Court can direct service of process.

g.   In section II, "Basis for Jurisdiction," there must be a statement of the constitutional right or federal law that each defendant violated.

h.   In section IV, "Statement of Claim," there must be a clear description of how **each** named defendant was involved in the alleged access-to-courts claim.

i.   In section V, "Injuries," there must be a statement concerning how **each** defendant's action or omission injured Plaintiff.

j.   Under "Relief," there must be a statement of what Plaintiff seeks through this action.

Plaintiff may submit exhibits with the amended complaint.[4]

---

[4] Plaintiff must individually number each exhibit in the lower right-hand corner of each exhibit. If his first exhibit has multiple pages, he should number the pages 1-A, 1-B, 1-C, etc.

Plaintiff must sign and date the amended complaint after the following statement on the form:

> Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Before signing the amended complaint, he must ensure his assertions are truthful and he has not knowingly made false material declarations. He must neither exaggerate nor distort the facts but instead must truthfully state the facts underlying his claims. Knowingly making a false material declaration in violation of 18 U.S.C. § 1623, is punishable by a fine, imprisonment, or both.

3.    Plaintiff's request to proceed in forma pauperis (Doc. 2) is incomplete. Thus, by **May 1, 2020**, Plaintiff shall provide a copy of his prison account statement for the six months preceding the filing of the Complaint. Alternatively, he may pay the $400 filing fee. Failure to either submit the statement or the filing fee may result in the dismissal of this action.

4.    The **Clerk** shall send Plaintiff a civil rights complaint form.

17

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of April, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:    Isaaih X. Ash, #CCSO19JBN002909